SOLON CHAMBER OF COMMERCE, Appellee,

v.

WOMEN'S GENERAL HOSPITAL et al., Appellants.

[Cite as *Solon Chamber of Commerce v. Women's Gen. Hosp.* (1992), 81 Ohio App.3d 687.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 60523, 60621.

Decided July 6, 1992.

Scott D. Maybaum, for appellee.

Daniel P. McDonnell, for appellant Women's General Hospital.

Thomas P. Gill and Thomas E. Malloy, for appellants George Eaton and Southeast Area Community Hospital.

Charles Riehl, for Solon.

NAHRA, Judge.

Appellants, Women's General Hospital, George Eaton, and Southeast Community Hospital, appeal from the trial court's judgment in favor of the Solon Chamber of Commerce. For the reasons set forth below, we affirm in part and reverse and remand in part for trial.

In the 1960s, the Solon Chamber of Commerce began to actively pursue the establishment of a hospital in Solon. The chamber of commerce formed a

hospital feasibility study committee and raised funds for the hospital. Over a period of years, the committee met with existing hospitals, including Polyclinic, Women's General, and St. Luke, about possible relocation or transference of beds to Solon.

In 1965, the chamber of commerce hospital committee expanded into a new Southeast Hospital Study Committee with six subcommittees. In 1967, hospital committee director George Eaton reported at a chamber of commerce board meeting that the Southeast Area Community Hospital ("Southeast") had been incorporated. Southeast never adopted regulations or bylaws, did not elect officers, and did not have a membership book or minute book. Correspondence on behalf of Southeast went out on the chamber of commerce letterhead. Trial testimony indicated that Southeast was the same entity as the chamber of commerce committee, and that it was incorporated in order to take title to land on which the hospital was intended to be built. However, not all of Southeast's original trustees were chamber of commerce members.

In 1972, Southeast took title to approximately twenty-six acres of land in Solon, together with Polyclinic Hospital. At that time, Southeast was working with Polyclinic to establish the hospital in Solon. Southeast paid approximately $147,000 for the land. In 1975, Southeast's efforts to establish the hospital with Polyclinic ended when the city of Solon failed to issue industrial revenue bonds which would have financed the hospital. Polyclinic's articles of incorporation were cancelled in 1982. After 1975, the original Southeast trustees were not involved in efforts to get the hospital. A new chamber of commerce committee was formed to continue the project.

In 1985, representatives of Southeast and Polyclinic signed a deed transferring the twenty-six acres in Solon to Women's General Hospital. The deed was not filed at that time. One of the original trustees of Southeast, George Eaton, signed the deed on behalf of Southeast. Eaton had not been active in the drive to obtain a certificate of need for the proposed Solon hospital since 1975. Eaton testified that he was not authorized to sign the deed by the Southeast trustees, but that he had signed it at the insistence of the Women's General Hospital trustees.

In September 1985, Women's General Hospital commenced dissolution proceedings. A representative indicated at trial that proceeds from the sale of the Solon property would be put into a trust fund with the Cleveland Foundation to be used for the same purposes for which the hospital was founded.

In December 1985, Southeast's articles were cancelled for failure to file a certificate of continued existence. In 1986, Eaton applied for reinstatement of

Southeast without consulting the other trustees. The corporation was reinstated in early June 1986.

On June 30, 1986, Eaton obtained the signatures of all of the living trustees of Southeast on a document prepared by Women's General. The document purported to ratify the conveyance by Eaton of Southeast's Solon property to Women's General. Two of Southeast's trustees testified at trial that they did not read the ratification document. One testified that Eaton misrepresented what the document was. The deed conveying the Solon property to Women's General was filed July 30, 1986.

In 1987, the Solon Chamber of Commerce filed a complaint for declaratory judgment against Women's General, the city of Solon, Southeast, and George Eaton. Solon was sued only because of its interest in appropriating the property at issue. The chamber of commerce asserted that it owned the property by virtue of its ownership interest in Southeast, or that Southeast was the successor to the chamber of commerce's hospital committee. It also asserted that the funds used to buy the property were the chamber of commerce's; that Polyclinic did not provide adequate consideration for its interest in the property; and that the deed was unauthorized. The chamber of commerce also requested an accounting of funds, and a jury trial.

A jury trial commenced on January 8, 1990. At the close of the evidence, the court determined that there were no factual issues for the jury to decide, and removed the case from the jury. The court subsequently issued an opinion which stated that the chamber of commerce's hospital committee was incorporated into Southeast. The court also concluded that Eaton had no authority to sign the deed, and voided it. The court found that the ratification was ineffective due to Eaton's misrepresentations and omissions of facts, and because the trustees had effectively resigned. The court also appointed the President of the Solon Chamber of Commerce as master of Southeast regarding the appropriation proceedings, and retained continuing jurisdiction of the case.

The court subsequently amended its judgment to state that there was no just cause for delay. Women's General timely appealed, and assigned eight errors. Eaton and Southeast filed a separate timely appeal, assigning four errors. The Solon Chamber of Commerce, as appellee, assigned five errors. Only the first two assignments can be considered pursuant to *Parton v. Weilnau* (1959), 169 Ohio St. 145, 8 O.O.2d 134, 158 N.E.2d 719, paragraph seven of the syllabus: "[a]ssignments of error of an appellee who has not appealed from the judgment may be considered by a reviewing court only when necessary to prevent a reversal of the judgment under review. (Section

2505.22, Revised Code, construed and applied.).'' Many of these assignments are interrelated and will be addressed together.

## I

■ Appellants claim that the chamber of commerce lacked standing to bring a declaratory judgment action.[1]

The entertainment of a declaratory judgment action rests within the sound discretion of the trial court, and will not be reversed absent abuse of discretion. *Arbor Health Care Co. v. Jackson* (1987), 39 Ohio App.3d 183, 530 N.E.2d 928, paragraph one of the syllabus; *Schaefer v. First Natl. Bank* (1938), 134 Ohio St. 511, 13 O.O. 129, 18 N.E.2d 263. R.C. 2721.03 provides in pertinent part that ''[a]ny person interested under a deed * * * may have determined any question of construction or validity arising under such instrument * * * and obtain a declaration of rights, status, or other legal relations thereunder.'' ''Person'' is defined in R.C. 2721.01 and includes nonprofit corporations. See, also, *N. Woods Civil Assn. v. Columbus Graphics Comm.* (1986), 31 Ohio App.3d 46, 31 OBR 62, 508 N.E.2d 676, syllabus.

The chamber of commerce alleged that it had an interest in the real property at issue by virtue of its alleged ownership interest in Southeast. The chamber of commerce also alleged it is a member of Southeast. As a member and/or owner of Southeast, the chamber of commerce alleged a sufficient interest in Southeast to bring suit contesting the validity of the conveyance of Southeast's sole asset. Accordingly, the trial court did not abuse its discretion in finding that the chamber of commerce had standing to bring this declaratory judgment action.

## II

■ Women's General's fourth assignment of error reads as follows:

''The Ohio Statute of Fraud[s] bars the plaintiff's cause of action.''

Ohio's Statute of Frauds is found in R.C. Chapter 1335. Women's General cites R.C. 1335.05, which provides in general that oral promises for the sale of

---

1. Eaton's and Southeast's first assignment of error reads as follows:
   ''Appellee Solon Chamber of Commerce lacks the requisite standing to bring the instant action under the appropriate statutes governing declaratory judgments.''
   Women's General Hospital's second and third assignments of error read as follows:
   ''The plaintiff did not set forth a cause of action and the plaintiff did not produce any testimony indicating an ownership interest in the real estate transferred to Women's General Hospital.
   ''A declaratory judgment suit by the plaintiff did not produce testimony authorizing plaintiff to avail itself of the declaratory judgment statute.''

lands, *inter alia,* are unenforceable. Women's General argues that this statute precludes this lawsuit, because the chamber of commerce was not named on the deeds, and was a distinct entity from the party named on the deeds.

R.C. 1335.05 is inapposite to this case, which is not a case to enforce an oral promise regarding the sale of land. Furthermore, the fact that a party is not named on a deed does not preclude an interested party's attempt to invalidate a deed. See, *e.g., Schueler v. Lynam* (1947), 80 Ohio App. 325, 36 O.O. 32, 75 N.E.2d 464. Women's General's fourth assignment of error is overruled.

### III

■ Women's General's fifth assignment of error reads as follows:

"Ohio Revised Code Section 1702.12(I) prohibits the plaintiff from being a party to this action."

R.C. 1702.12(I) provides as follows:

*"No lack of, or limitation upon, the authority of a corporation* shall be asserted in any action except (1) by the state in an action by it against the corporation, (2) by or on behalf of the corporation against a trustee, an officer, or a member as such, or (3) by a member as such or by or on behalf of the members against the corporation, a trustee, an officer, or a member as such. The division shall apply to any action brought in this state upon any contract made in this state by a foreign corporation." (Emphasis added.)

This subsection addresses the authority of a *corporation.* There is no question that Southeast, as a corporation, had the authority to sell its property pursuant to R.C. 1702.12(F). The question in this case is whether George Eaton had the authority to act on behalf of the corporation. Accordingly, R.C. 1702.12(I) is inapplicable.

### IV

■ Appellants claim that the chamber of commerce cannot attempt to void this deed, because it did not file a claim by December 15, 1985 in Women's General's dissolution proceedings.[2] However, the deed from Southeast to

---

**2.** Women's General Hospital's sixth assignment of error reads as follows:
   "The plaintiff failed to follow the dissolution order of Common Pleas Court of Cuyahoga County in case No. 97612 which is the judicial dissolution of Women's General Hospital."
   Eaton's and Southeast's second assignment of error reads as follows:
   "Appellee Solon Chamber of Commerce's complaint for declaratory judgment is barred by O.R.C. 1702.39 and by rulings of the common pleas [*sic*] in case No. 97612 governing the dissolution of Women's General Hospital."

Women's General was not filed until July 1986. Accordingly, the chamber of commerce had no claim against Women's General prior to the dissolution deadline, and its subsequent claim is not barred.

## V

█ Appellants also claim that the chamber of commerce is barred from invalidating this deed by R.C. 1702.39(C).[3] That subsection provides as follows:

"An action to set aside a conveyance by a corporation on the ground that any section of the Revised Code applicable to the lease, sale, exchange, transfer, or other disposition of all or substantially all the assets of such corporation has not been complied with, shall be brought within ninety days after such transaction, or such action shall be forever barred."

R.C. 1702.39 applies to actions brought regarding winding up transactions, with the purpose of lending finality to the dissolving corporation's affairs. This case is not about the winding up of a corporation. Although the property at issue may be Southeast's only asset, there is no allegation in the complaint indicating that the corporation was in the process of winding up its affairs, nor had the corporation passed a resolution to that effect pursuant to R.C. 1702.47. The trial court correctly determined that 1702.39(C) is inapplicable to this case.

## VI

█ Appellants contend that the trial court improperly took the case away from the jury at the close of the evidence.[4] R.C. 2721.10 provides:

"When a * * * [declaratory judgment action] involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending."

---

**3.** Women's General's seventh assignment of error reads as follows:
"Section 1702.39 of the Ohio Revised Code requires the plaintiff to bring an action within ninety (90) days after a deed is filed for record."
See, also, Eaton's and Southeast's second assignment of error in fn. 2, *supra*.

**4.** Women's General's first assignment of error reads as follows:
"The issues raised by the pleading and testimony were issues to be decided by a jury."
Eaton's and Southeast's fourth assignment of error reads as follows:
"The trial court committed reversible error by taking the case away from the jury without obtaining the consent of all * * * interested parties to the litigation."
Solon Chamber of Commerce's first assignment of error reads as follows:
"The issues raised by the pleadings, testimony and evidence were properly decided by the court."

R.C. 2311.04 defines the right to a jury trial in other civil cases:

"Issues of law must be tried by the court, unless referred as provided in the Rules of Civil Procedure. Issues of fact arising in actions for the recovery of money only, or specific real or personal property, shall be tried by a jury, unless a jury trial is waived, or unless all parties consent to a reference under the Rules of Civil Procedure.

"All other issues of fact shall be tried by the court, subject to its power to order any issue to be tried by a jury, or referred."

Civ.R. 38(D) provides that a jury demand may not be withdrawn without the consent of the parties.

This case involved specific real property, such that factual issues had to be submitted to the jury pursuant to R.C. 2311.04. However, the trial court determined that there were no factual issues for the jury to decide. It did not grant the chamber of commerce's directed verdict motion.

The trial court correctly determined that the issue of whether Eaton was authorized to sign the deed was solely a legal issue. The facts surrounding Eaton's conveyance of the property are not disputed. Eaton admitted that the Southeast corporation was not meeting and that he did not have prior approval of the other trustees for the deed. Eaton later stated on direct examination that he had authority to sign the deed. However, he did not contradict any specific facts which indicated that he had no prior approval of the trustees to sign the deed.

The trial court also found that the ratification of Eaton's unauthorized act was a legal and not a factual issue.

"Ratification by a principal cannot occur unless that principal has full knowledge and understanding of the acts performed by the agent. * * * [T]he burden of proving that a principal ratified an agent's acts is upon the agent who must clearly show that the principal had knowledge of all the facts pertaining to the act." *Testa v. Roberts* (1988), 44 Ohio App.3d 161, 165, 542 N.E.2d 654, 659, see, also, paragraph four of the syllabus; *Morr v. Crouch* (1969), 19 Ohio St.2d 24, 48 O.O.2d 43, 249 N.E.2d 780, paragraph four of the syllabus; *Bernardo v. Anello* (1988), 61 Ohio App.3d 453, 573 N.E.2d 126, headnote eight.

It is essential to ratification that the ratifying party intends to be bound by the previously unauthorized act. *London & Lancashire Indemn. Co. of Am. v. Fairbanks Steam Shovel Co.* (1925), 112 Ohio St. 136, 152, 147 N.E. 329, 334.

In this case, the alleged ratification consisted of a writing signed by all of the then-living trustees pursuant to R.C. 1702.25. That section allows trust-

ees to authorize actions without meeting provided all of the trustees approve the action in writing. The ratifying document states in part as follows:

"[T]he undersigned do hereby ratify and approve the transfer and conveyance of the [Solon] Property to the [Women's General Hospital] Association and hereby authorize, ratify and approve any and all acts taken and to be taken by George D. Eaton, President of [Southeast], deemed necessary and appropriate by him, including but not limited to, execution of a general warranty deed transferring the Property to the Association."

At trial, Eaton and Women's General relied on the document to show that the trustees had full knowledge of the acts performed by Eaton. Eaton also testified that he explained the document to each trustee.

However, although the writing clearly was intended to include Eaton's deed to Women's General, it did not state that Eaton had in fact already signed the deed. Dr. Nancy Johnson stated that Eaton misrepresented the nature and effect of the ratification document, and did not show it to her when she signed. Another trustee who signed the ratification document stated that he did not read the document. Eaton also testified on cross-examination that he obtained the trustees' signatures at the behest of Women's General, the grantee, and not at the request of the Southeast trustees.

The above evidence reflects that factual questions existed regarding ratification, *i.e.*, whether or not Eaton disclosed to the trustees that he had already signed a deed conveying the Solon property to Women's General, and whether the trustees intended to be bound by that deed. Accordingly, these issues should have been submitted to the jury. This case is reversed and remanded for jury determination of the ratification issue.

## VII

█ Appellants claim that Southeast's trustees continued in office and that they were properly authorized to authorize and/or ratify the deed.[5]

R.C. 1702.28(A) provides as follows:

---

**5.** Women's General's eighth assignment of error reads as follows:
"Trustees of Southeast remained trustees and had authority to give authorization and ratification to Eaton to deed Southeast's interest to Women's. (Plaintiff's Exhibit No. 28.)"
Eaton's and Southeast's third assignment of error reads as follows:
"Southeast Community Hospital was a viable corporation at the time the deed was transferred and the trustees were valid trustees with the proper authority to transfer the deed to Women's General Hospital contrary to the findings of the trial court."
Solon Chamber of Commerce's second assignment of error states as follows:
"The acts of George Eaton were unauthorized and non-ratified and the court was correct to void, cancel and set aside the deed signed August 25, 1985."

"Unless the articles or the regulations provide for a different term, each trustee shall hold office until the next annual meeting of voting members and until his successor is elected, or until his earlier resignation, removal from office, or death." See, also, Fletcher Cyclopedia Corporations (1990) 160, Section 344.

Resignation or abandonment of a corporate office is not presumed by the corporation's failure to meet and observe formalities, but requires an overt refusal to act or lack of attendance at actual meetings. See, *e.g.*, *id.* at 167, Section 346.

In this case, the chamber of commerce claimed, and the court found, that Southeast's trustees had effectively resigned their offices. However, there was no evidence that any of the trustees refused to act on behalf of the corporation or were absent from meetings, since no formal meetings were conducted. As of the time of trial, the trustees continued in office and the corporation continued to exist as a viable corporation.

The case of *Bartholomew v. Bentley* (1852), 1 Ohio St. 37, predates R.C. Chapter 1702 and is distinguishable. That case involved a for-profit corporation which effectively went bankrupt in 1818. Many years later a minority of its officers engaged on various stock transfers and issued worthless stock. When sued, they claimed that they had "held over" in order to avoid personal liability, which the court did not allow.

This case is reversed insofar as the trustees remained trustees at the time of the alleged ratification pursuant to R.C. 1702.28(A). This case is reversed and remanded for a jury determination of the factual issues concerning the Southeast trustees' purported ratification of the deed. If the jury determines that the ratification was properly authorized, then Southeast's conveyance should be declared valid. If the jury determines that the ratification was unauthorized, then the deed should be declared void, and Southeast should be declared the rightful owner of its interest in the property.

*Judgment reversed*
*and cause remanded.*

MATIA, C.J., and HARPER, J., concur.